# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ELM COOPER, LLC,** | : | Civil No. 4:19-CV-01053 |
| **Plaintiff,** | : | |
| v. | : | (Magistrate Judge Carlson) |
| **MODULAR STEEL SYSTEMS, INC.,** | : | |
| **Defendant.** | : | |

## MEMORANDUM AND ORDER

### I.  Factual Background

The plaintiff, Elm Cooper, LLC, filed this breach of contract action against the defendant, Modular Steel Systems, Inc. ("MSS") in June of 2019. In November of 2018, the parties entered into a contract for the construction of modular units in New Haven, Connecticut, with MSS providing the modular construction services. Under the terms of this agreement, Elm Cooper paid a $250,000 deposit to MSS but retained the ability to terminate the contract and obtain a refund of any unspent deposited funds if it determined that this real estate project was no longer economically viable. Elm Cooper contends that in November 2018, shortly after it signed this agreement and paid the $250,000 deposit to MSS, it terminated the contract with MSS pursuant to the contract's cancellation provision and demanded its deposit of $250,000 be returned. To date, MSS has not returned Elm Cooper's

1

deposit, but rather contends that Elm Cooper did not terminate the contract, given ongoing email exchanges between the parties that allegedly demonstrated continuing compliance with the contract terms after November 27, 2018. MSS claims that it expended significant time, money, and resources in compliance with the contract with Elm Cooper due to the continuous email exchanges. A pretrial conference is scheduled for March 2, 2020, and trial is set to begin on March 16, 2020.

The parties have filed now motions *in limine* to preclude the introduction of certain evidence at trial. The plaintiff's motion seeks to preclude MSS from introducing evidence of some of its expenditures after the contract had been terminated. (Doc. 21). Specifically, the motion invites us to preclude evidence of MSS's lease of a property on Airport Road in Selinsgrove, Pennsylvania, which MSS leased as a manufacturing space to construct the modular units for the contract with Elm Cooper. Elm Cooper contends that because the contract was terminated in November 2018 and the lease of this property was not signed until January of 2019, MSS should not be permitted to offset the damages in this case with the amount spent on the lease of this property, as the contract had already been terminated. For its part, MSS argues that several emails exchanged between November 2018 and May 2019 evidence Elm Cooper's intent to proceed with the contract despite the email in November 2018 purporting to terminate the contract. Thus, according to MSS, the evidence concerning the Airport Road property is relevant to the damages

2

claims in this case, as the property was leased in order to manufacture the modular units for the contract with Elm Cooper. Notably, neither of the parties have provided us with the full body of these underlying e-mails and communications, which form the factual basis for their respective claims. Thus, we are invited in this motion *in limine* to rule as a matter of law prior to trial on pivotal factual issues in the absence of a full presentation of what are undeniably disputed facts.

Likewise, MSS has filed a motion *in limine* which urges us to resolve pivotal disputed factual questions prior to trial on a record that is both sparse and replete with factual disputes. For its part, MSS has filed a motion *in limine* to preclude the plaintiff from introducing evidence of the contract's economic viability. (Doc. 22). Elm Cooper's basis for terminating the contract was because it was determined that the project was not economically viable at the time, and MSS contends that Elm Cooper should be completely precluded from presenting evidence on this score because MSS has not received certain discovery from Elm Cooper regarding the contract's economic viability. Thus, MSS argues that Elm Cooper should not be permitted to introduce evidence of the contract's economic viability at trial. Elm Cooper denies MSS's claim that it has defaulted on its discovery obligations, and instead insists that MSS has failed to provide complete discovery. Notably, neither party ever filed a timely motion to compel discovery.

These motions have been briefed by the parties and are, therefore, ripe for resolution. For the reasons set forth below, the motions will be DENIED without prejudice subject to later renewal at trial.

## II. Discussion

### A. Motions *in Limine*—Guiding Principles

The Court is vested with broad inherent authority to manage its cases, which carries with it the discretion and authority to rule on motions *in limine* prior to trial. See Luce v. United States, 469 U.S. 38, 41 n.4 (1984); In re Japanese Elec. Prods. Antitrust Litig., 723 F.2d 238, 260 (3d Cir. 1983), rev'd on other grounds sub nom., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986) (the court exercises its discretion to rule *in limine* on evidentiary issues "in appropriate cases"). Courts may exercise this discretion in order to ensure that juries are not exposed to unfairly prejudicial, confusing or irrelevant evidence. United States v. Romano, 849 F.2d 812, 815 (3d Cir. 1988). Courts may also do so in order to "narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1069 (3d Cir. 1990) (citation omitted). However, courts should be careful before doing so.

In considering motions *in limine* which call upon the Court to engage in preliminary evidentiary rulings under Rule 403 of the Federal Rules of Evidence, we begin by recognizing that these "evidentiary rulings [on motions *in limine*] are

4

subject to the trial judge's discretion and are therefore reviewed only for abuse of discretion . . . . Additionally, application of the balancing test under Federal Rule of Evidence 403 will not be disturbed unless it is 'arbitrary and irrational.' " Abrams v. Lightolier Inc., 50 F.3d 1204, 1213 (3d Cir. 1995) (citations omitted); see Bernardsville Bd. of Educ. v. J.H., 42 F.3d 149, 161 (3d Cir. 1994) (reviewing *in limine* rulings for abuse of discretion). Yet, while these decisions regarding the exclusion of evidence rest in the sound discretion of the district court and will not be disturbed absent an abuse of that discretion, the exercise of that discretion is guided by certain basic principles.

One of the key guiding principles is reflected in the philosophy which shapes the rules of evidence. The Federal Rules of Evidence can aptly be characterized as evidentiary rules of inclusion, which are designed to broadly permit fact-finders to consider pertinent factual information while searching for the truth. The inclusionary quality of the rules, and their permissive attitude towards the admission of evidence, is embodied in three cardinal concepts. The first of these concepts is Rule 401's definition of relevant evidence. Rule 401 defines what is relevant in an expansive fashion, stating:

> "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Fed. R. Evid. 401.

5

Adopting this broad view of relevance, it has been held that: "Under [Rule] 401, evidence is relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' [Therefore] '[i]t follows that evidence is irrelevant only when it has no tendency to prove the fact. Thus the rule, while giving judges great freedom to admit evidence, diminishes substantially their authority to exclude evidence as irrelevant.' " Frank v. County of Hudson, 924 F. Supp. 620, 626 (D.N.J. 1996) (citing Spain v. Gallegos, 26 F.3d 439, 452 (3d Cir. 1994) (quotations omitted)).

This quality of inclusion embraced by the Federal Rules of Evidence, favoring the admission of potentially probative proof in all of its forms, is further buttressed by Rule 402, which generally defines the admissibility of relevant evidence in sweeping terms, providing that:

> All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible.

Fed. R. Evid. 402.

Thus, Rule 402 expressly provides that all "[r]elevant evidence will be admissible unless the rules of evidence provide to the contrary." United States v. Sriyuth, 98 F.3d 739, 745 (3d Cir. 1996) (citations omitted). While these principles

6

favoring inclusion of evidence are subject to some reasonable limitations, even those limitations are cast in terms that clearly favor admission of relevant evidence over preclusion of proof in federal proceedings. Thus, Rule 403, which provides grounds for exclusion of some evidence, describes these grounds for exclusion as an exception to the general rule favoring admission of relevant evidence, stating that:

> Although relevant, evidence may be excluded if its probative value **is substantially outweighed** by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed. R. Evid. 403 (emphasis added).

By permitting the exclusion of relevant evidence only when its probative value is "substantially outweighed" by other prejudicial factors, Rule 403 underscores the principle that, while evidentiary rulings rest in the sound discretion of the court, that discretion should consistently be exercised in a fashion which resolves all doubts in favor of the admission of relevant proof in a proceeding, unless the relevance of that proof is substantially outweighed by some other factors which caution against admission.

These broad principles favoring the admission of relevant evidence also shape and define the scope of this Court's discretion in addressing motions *in limine* like the motion filed by the parties here, which seek a pre-trial ruling excluding a range of evidence largely on relevance grounds. In the past, the United States Court of Appeals for the Third Circuit has cautioned against such preliminary and wholesale

7

exclusion of evidence, noting that it has "made clear that rulings excluding evidence on Rule 403 grounds should rarely be made *in limine*." Walden v. Georgia–Pacific Corp., 126 F.3d 506, 518 n. 10 (3d Cir. 1997). The reason for this caution is evident: oftentimes a court "cannot fairly ascertain the potential relevance of evidence for Rule 403 purposes until it has a full record relevant to the putatively objectionable evidence." Id.; see also In re Diet Drugs Products Liability Litigation, 369 F.3d 293, 314 (3d Cir. 2004). As the Court of Appeals has observed when advising against excessive reliance on motions *in limine* to exclude evidence under Rule 403:

> [M]otions *in limine* often present issues for which final decision is best reserved for a specific trial situation. American Home, 753 F.2d at 324; cf. Luce v. United States, 469 U.S. 38, 41-42, 105 S. Ct. 460, 463-64, 83 L.Ed.2d 443 (1984) (holding that criminal defendant must testify to preserve claim of improper impeachment with prior conviction) ("The [*in limine*] ruling is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the defendant's proffer. Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling."). This is particularly true when the evidence is challenged as irrelevant or prejudicial; the considerations weighed by the court will likely change as the trial progresses. See Rosenfeld v. Basquiat, 78 F.3d 84, 91 (2d Cir. 1996) ("Unlike rulings that involve balancing potential prejudice against probative value, the ruling in the present case was not fact-bound and no real purpose other than form would have been served by a later objection."). We have also made clear that rulings excluding evidence on Rule 403 grounds should rarely be made *in limine*. "[A] court cannot fairly ascertain the potential relevance of evidence for Rule 403 purposes until it has a full record relevant to the putatively objectionable evidence. We believe that Rule 403 is a trial-oriented rule. Precipitous Rule 403 determinations, before the challenging party has had an opportunity to develop the record, are therefore unfair and improper." Paoli I, 916 F.2d at 859; see also In re Paoli R.R. Yard PCB

Litig., 35 F.3d 717, 747 (3d Cir. 1994) ("Paoli II"). Under these and similar circumstances, if a district court makes a tentative pre-trial ruling, it has the opportunity to "reconsider [its] in limine ruling with the benefit of having been witness to the unfolding events at trial." United States v. Graves, 5 F.3d 1546, 1552 (5th Cir. 1993).

Walden, 126 F.3d at 518 n. 10.

The Third Circuit has thus cautioned that "pretrial Rule 403 exclusions should rarely be granted. . . . Excluding evidence as being more prejudicial than probative at the pretrial stage is an extreme measure that is rarely necessary, because no harm is done by admitting it at that stage." In re Paoli R. Yard PCB Litig., 916 F.2d 829, 859 (3d Cir. 1990); see also Spain v. Gallegos, 26 F.3d 439, 453 (3d Cir. 1994) (noting that the Third Circuit's "cautious approach to Rule 403 exclusions at the pretrial stage . . . ."). Moreover, the Third Circuit has characterized Rule 403 as a "trial-oriented rule" such that "[p]recipitous Rule 403 determinations, before the challenging party has had an opportunity to develop the record, are . . . unfair and improper." In re Paoli R. Yard PCB Litig., 916 F.2d at 859.

Accordingly, the principles which guide our consideration of motions *in limine* urge courts to exercise their broad discretion sparingly in this field, and avoid precipitous pre-trial rulings excluding evidence on relevance and prejudice grounds or otherwise unduly curtailing the parties' presentations of their case. It is against the backdrop of these guiding legal tenets that we consider the parties' motions *in limine*.

9

## B. The Motions *in Limine* Will Be Denied Without Prejudice.

At the outset, we note that these two motions appear to advance discovery disputes between the parties, some of which have not previously been brought before the Court through the appropriate discovery channels. MSS contends that Elm Cooper has not produced evidence concerning the contract's economic viability—the sole basis for Elm Cooper's termination of the contract. For its part, Elm Cooper contends that MSS has failed to respond to its discovery requests, and in addition, has not provided adequate time for Elm Cooper to respond to the requests served upon it. Thus, the parties have cloaked their discovery disputes as motions *in limine*, seeking to bar the use of this evidence that allegedly has not been disclosed. Further, the relief that each party seeks goes far beyond preclusion of specific evidence which may not have been timely disclosed in discovery. Rather, each party insists that the opposing party should be entirely foreclosed from advancing a pivotal claim or defense. Moreover, the parties' competing arguments are presented to us without any necessary factual context that would enable us to make fully informed decisions on these discovery questions.

We acknowledge that, in certain cases, the court may preclude evidence at trial as a sanction for discovery violations:

> In determining whether to exclude evidence as a sanction for failure to comply with a discovery order, the Court must consider the following factors: (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified; (2) the ability of that party

> to cure the prejudice; (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court; (4) bad faith or willfulness in failing to comply with the district court's order. Meyers v. Pennypack Woods Home Ownership Ass'n, 559 F.2d 894, 904–05 (3d Cir.1977), overruled on other grounds, Goodman v. Lukens Steel Co., 777 F.2d 113 (3d Cir.1985). In addition, the Court is to consider the importance of the excluded testimony. Konstantopoulous v. Westvaco Corp., 112 F.3d 710, 719 (3d Cir.1997).

Klatch-Maynard v. Sugarloaf Twp., No. 3:06-CV-0845, 2011 WL 2006424, at *3 (M.D. Pa. May 23, 2011). In this case, on the incomplete record before us, we will decline to treat these motions as either motions to compel discovery or motions for discovery sanctions. Instead, we will deny these motions without prejudice, subject to renewal at trial, where both parties should be prepared to show that the evidence it intends to use has been disclosed appropriately and in accordance with the Federal Rules of Civil Procedure.

In the instant case, the primary dispute between the parties relates to the termination of the contract. Elm Cooper contends that the contract was terminated in November 2018. To support this assertion, it attaches an email sent on November 27, 2018 from Elm Cooper's counsel to MSS, which states that Elm Cooper was not moving forward with the contract project at that time because the project was not economically viable. (Doc. 1-1, at 105). Indeed, the contract included a provision that allowed Elm Cooper to terminate the contract if it was determined that the project was not economically viable. (Id., at 64-65). In addition, the email stated that

11

there was an agreement for a return of the $250,000.00 deposit that Elm Cooper had sent to MSS. (Id., at 105).

MSS does not dispute that it has not returned the deposit to Elm Cooper. However, MSS asserts that, after the November 27, 2018 email, there continued to be email communications between Elm Cooper and MSS regarding the contract project. Specifically, MSS contends that "[e]mails and documents exchanged between the parties through May of 2019 showed continued direction to participate in this Project, evaluation of costs and provide information to Plaintiff's lenders and proposed general contractors." (Doc. 29, at 6). MSS argues that there are dozens of email and document exchanges that evidence Elm Cooper's interest in proceeding with the project, and MSS's continued compliance with requests made by Elm Cooper, including the lease of the Airport Road property as a dedicated manufacturing space for the project. (Id., at 7).

We note that neither party has provided us with the additional emails and documents that were allegedly exchanged between November 27, 2018 and May of 2019. However, in both its answer to the plaintiff's complaint and its memorandum in opposition to the plaintiff's motion *in limine*, MSS vehemently asserts that Elm Cooper's conduct after its purported termination email in November 2018 is what drove MSS to continue expending resources in furtherance of completion of the contract project. (Docs. 5, 29). According to MSS, one of the steps it took in

furtherance of the contract was the leasing of the Airport Road property as a manufacturing space. Thus, there is a factual dispute as to the nature of the parties' communications following the November 2018 termination email. This dispute goes to an issue that is pivotal to this lawsuit; namely, whether the contract was, in fact, terminated in November 2018.

Given these factual disputes, and the paucity of information currently presented to us, we cannot conclude at this stage that MSS should be entirely precluded from introducing evidence concerning the Airport Road lease. If MSS is able to produce these additional emails, and if these emails tend to show that Elm Cooper intended to proceed with the contract even after its termination email, the Airport Road lease would be relevant to Elm Cooper's damages claims, specifically how MSS could offset Elm Cooper's damages given its apparent reliance on Elm Cooper's conduct. In essence, Elm Cooper is asking the Court to rule on the motion *in limine* in a way that would adopt its factual narrative regarding a central, disputed, issue in this lawsuit and resolve these factual disputes in its favor in advance of trial based upon a single email, where the defendant has proffered that there are several additional email exchanges that provide essential context to this transaction, expressly contradict this single email, and give rise to a factual dispute concerning the purported termination of the contract.

While we note that Elm Cooper has advanced several arguments in support of its motion *in limine*, all of the arguments presented assume Elm Cooper's version of events—that the contract was undoubtedly terminated in November 2018. However, as we have explained, these legal arguments rest on the determination of factual matters since MSS disputes that Elm Cooper, in fact, terminated the contract, as Elm Cooper allegedly continued to exchange communications concerning the contract after the November 27, 2018 termination email. Moreover, a motion *in limine* is not the appropriate procedural vehicle to obtain such relief in advance of trial, particularly where Elm Cooper has not identified any specific evidence to be excluded, and where Elm Cooper is asking the Court to resolve factual disputes in its favor, a task better suited for a factfinder.

In the same vein, we cannot conclude at this stage that Elm Cooper should be prohibited from introducing evidence regarding the contract project's economic viability. As we have explained, the main dispute between the parties is the contract's termination. On this score, we note that "[u]nlike a summary judgment motion, which is designed to eliminate a trial in cases where there are no genuine issues of fact, a motion *in limine* is designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." Bowers v. Nat'l Collegiate Athletic Ass'n, 563 F.Supp.2d 508, 531-32 (D.N.J. 2008) (quoting Bradley v. Pittsburgh Bd. Of Education, 913 F.2d 1064, 1069 (3d Cir. 1990) (alterations in original)). Further,

as we have noted, a determination of any request to exclude evidence due to alleged discovery violations entails weighing a variety of competing factual considerations, none of which are fully presented to us at this time. Klatch-Maynard v. Sugarloaf Twp., No. 3:06-CV-0845, 2011 WL 2006424, at *3 (M.D. Pa. May 23, 2011). Thus, prohibiting Elm Cooper from introducing evidence regarding its sole basis for the purported termination of the contract would be to resolve the primary disputed factual issue in favor of MSS. We will decline the invitation to adopt this course at the present time.

However, we note for all parties that the purpose of discovery is to eliminate surprise at trial, and the court retains its discretion to exclude evidence at trial if that evidence was not timely disclosed and the failure to make a timely disclosure unduly prejudices the opposing party. Thus, while we will not foreclose claims or defenses at this time based upon these alleged discovery defaults, parties who object to specific evidence based upon a failure to make timely discovery should be prepared to address the discretionary factors which guide our judgment, both at the pre-trial conference scheduled before the court and at trial. On this score, counsel should identify at the pre-trial conference any specific exhibits which they contend were not timely disclosed by the opposing party.

Accordingly, we will DENY both of the motions *in limine* without prejudice to renewal and resolution of these evidentiary issues at trial.

An appropriate order follows.

*S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ELM COOPER, LLC,** | : | Civil No. 4:19-CV-01053 |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| **MODULAR STEEL SYSTEMS, INC.,** | : | |
| | : | |
| **Defendant.** | : | |

## **ORDER**

AND NOW this 25th day of February 2020, in accordance with the accompanying Memorandum, the plaintiff's and defendant's motions *in limine* (Docs. 21, 22) are DENIED without prejudice to renewal and resolution of these evidentiary issues at trial. a pre-trial conference will be held on **March 2, 2020 at 10:00 a.m.** at the undersigned's chambers 11th floor, U.S. Courthouse, Harrisburg, Pennsylvania. In accordance with the stated preferences of the parties trial of this case will be conducted at the William J. Nealon U.S. Courthouse, in Scranton, Pennsylvania. Counsel should contact our deputy clerk Deputy Clerk, Kevin Neary, at 717-221-3924 or

Kevin_Neary@pamd.uscourts.gov

To obtain specifics regarding where to report for trial.

*S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge